IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| POISON SPIDER BICYCLES, INC., a Utah corporation,<br><br>    Plaintiff,<br>v.<br><br>TAP MANUFACTURING, LLC, a Delaware limited liability company; POISON SPYDER CUSTOMS, INC., a California corporation; LAWRENCE ROBERT McRAE, an individual residing in California; and JOHN DOES 1- 20,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Judge Clark Waddoups<br><br>Case No.: 2:16-cv-00148 |

  This dispute is between a bicycle shop and an off-road vehicle company with similar names inspired by a local public trail. Defendants TAP Manufacturing, LLP (TAP), Poison Spyder Customs, Inc. (PSC), and Lawrence Robert McRae (McRae) (collectively, Defendants), seek summary judgment on plaintiff's first, second, fifth, seventh, and ninth claims of trademark infringement and unfair competition under federal, state, and common law. Defendants also seek summary judgment on plaintiff's third, fourth, and eighth claims of trademark dilution under federal, state, and common law, as well as plaintiff's sixth claim under the Utah Consumer Sales Practices Act. The court held a hearing on this motion on January 10, 2018. Having found that plaintiff failed to show excusable neglect to warrant modifying its prior order denying plaintiff's motion for extension of time to file its opposition to Defendants' motion for summary judgment, the court allowed plaintiff to argue the legal merits of Defendants' motion in the context of the undisputed facts in Defendants' motion for summary judgment. (ECF No. 52.) After considering

the parties' memoranda, the record, relevant legal authority, and hearing oral argument, the court GRANTS Defendants' motion for summary judgment in its entirety. (ECF No. 27.)

## BACKGROUND

### A. The Origin of Poison Spyder Customs

Clifton Slay formed PSC in 2002 to produce heavily customized off-road vehicles based loosely on the Jeep Wrangler platform. (ECF No. 27 at 2.) The vehicles are capable of "rock crawling," or literal scaling of boulder-strewn off-road trails. The company's name was inspired by the Poison Spider Mesa public trail located outside of Moab, Utah, which is popular with cyclists and off-road enthusiasts. Mr. McRae purchased the company in 2008 and operated it until January 2015, when its assets were purchased by TAP. TAP is a large nationwide manufacturer, distributor, and retailer of off-road parts and accessors for trucks and SUV's. Under the PSC brand, TAP markets and sells hundreds of unique parts and accessories ranging from bumpers and roll cages to off-road lighting and customized hood louvers. TAP sells the PSC products in its nationwide chain of retail stores (4 Wheel Parts Performance Centers), on its Internet websites, and through many third-party distributors and retailers of off-road automotive products and services. (*Id.* at 3-4.)

### B. The PSC Brand

The PSC brand is designed to appeal to the off-road Jeep enthusiast market. Many of TAP's products have the stylized PCS spider logo cut by laser into the product itself, such that every vehicle with a PSC product installed becomes a mobile advertisement. The PSC trademarks are also utilized online and in print magazines and advertisements. (*Id.* at 4.) PCS trademarks and brands are also promoted through in-person promotional activities, such as at nationwide rock-crawling events including the Easter Jeep Safari in Moab, Utah; the Bantam

Jeep Heritage Festival in Butler, Pennsylvania; and the Pickens Sheriff's Jeep Fest in Jaspar, Georgia. TAP also promotes the PCS brand via a line of "swag" merchandise featuring the PSC logo and usually its name on items such as T-shirts, hats, and the like. (*Id.* at 5.) Such "swag" makes up around two percent of PCS's annual sales. (*Id.* at 7.) TAP has never sold bicycle products, has not marketed to the cycling industry or consumer, and does not intend to enter the cycling market. (*Id.* at 12.)

### C. The PSC Marks

The words "Poison Spyder Customs" or "Poison Spyder" and a fanciful representation of a spider comprise PCS's trademarks, which have been in use continually since the company began operating in 2003. PCS originally obtained a United States Trademark Registration for "Poison Spyder Customs" in 2006, which was renewed in 2013, for "automobiles and automobile parts, namely custom-made all-terrain off-road vehicles, chassis and bumpers." (*Id.* at 6.)

  

TAP's applications for registration of these marks for apparel have either been rejected or are suspended pending review following resolution of this lawsuit. (*Id.*)

### D. Poison Spider Bicycles

Plaintiff Poison Spider Bicycles is a bicycle shop located in Moab, Utah whose name was similarly derived from the local public Poison Spider Mesa trail. (ECF No. 27 at 7.) Its primary focus is its brick and mortar business, although it does sell via the Internet as well. (*Id.* at 13-14.)

3

In September 1997, plaintiff registered a trademark for "Poison Spider Bicycles" for "retail store services featuring bicycles and bicycle accessories, namely, water bottles, locks, fanny packs, T-shirt, shorts and caps." (*Id.* at 7.) Plaintiff believes its customers purchase its branded apparel items primarily to identify with the Poison Spider Bicycles brand. (*Id.* at 13.) Plaintiff does not sell off-road parts and accessories nor service off-road vehicles, and has no intention to expand its brand into this market. (*Id.*) Plaintiff's marks and logos have been presented differently over the years:



Website, 2000 (ECF No. 27 at 22.)   T-shirt designs, 2002 (ECF No. 27 at 23.)




Apparel, 2004 (ECF No. 27 at 24.)   Website, 2007 (ECF No. 27 at 24.)




Website, 2011 (ECF No. 27 at 24.)   Website, 2013 (ECF No. 27 at 24.)

4

Plaintiff's trademark registration application for its Poison Spider Bicycles mark in the apparel class was suspended indefinitely due to TAP's prior apparel class application. (ECF No. 27 at 7.)

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). When applying this standard, the court must "review the evidence and draw reasonable inferences therefrom in a light most favorable to the nonmoving party." *Commercial Union Ins. Co. v. Sea Harvest Seafood Co.*, 251 F.3d 1294, 1298 (10th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met this initial burden, the burden shifts to the nonmoving party to "'set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)). In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party is required to "go beyond the pleadings" and identify specific facts that support each element of its case. *See McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 322). "The plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## ANALYSIS

I.   **Trademark Infringement and Unfair Competition Claims**

Analysis of trademark infringement and unfair competition claims hinge on the likelihood of confusion between similar marks. *See* 15 U.S.C. § 1114(a); 15 U.S.C. § 1125(a)(1)(A); Utah Code Ann. §70-3a-402(1)(a)(ii). "Although 'likelihood of confusion is frequently a fairly disputed issue of fact on which reasonable minds may differ, the issue is amenable to summary judgment in appropriate cases.'" *King of the Mt. Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1089 (quoting *Universal Money Ctrs., Inc. v. AT&T*, 22 F.3d 1527, 1530 n.2 (10th Cir. 1994).) The Tenth Circuit has identified a list of non-exhaustive, interrelated factors for a court to consider when determining whether a likelihood of confusion exists between two marks, none of which alone is dispositive:

(a) the degree of similarity between the marks;
(b) the intent of the alleged infringer in adopting its mark;
(c) evidence of actual confusion;
(d) the relation in use and the manner of marketing between the goods or services marketed by the competing parties;
(e) the degree of care likely to be exercised by purchasers; and
(f) the strength or weakness of the marks.

*King of the Mtn. Sports*, 185 F.3d at 1089–90. The court considers each factor below.

    A.  <u>The degree of similarity between the marks.</u>

The degree of similarity between marks is tested on "three levels: sight, sound, and meaning." *Id.* at 1090. The marks are not compared side-by-side; instead, "'the court must determine whether the alleged infringing mark will be confusing to the public when singly presented.'" *Id.*(quoting *Universal Money Ctrs.*, 22 F.3d at 1531. "[E]vidence of actual confusion in the marketplace may be the best indication of likelihood of confusion." *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 974 (10th Cir. 2002). "Such evidence may be introduced

through surveys, although their evidentiary value depends on the methodology and questions asked." *Id.* Here, the plaintiff conducted no survey(s) and designated no expert witness. This factor weighs in favor of Defendants solely on the basis that plaintiff failed to adequately present evidence of actual confusion.

The court is also not persuaded that the parties' use of the same or similar words demonstrates a likelihood of actual confusion. *See Big Dog Motorcycles, LLC v. Big Dog Holdings, Inc.*, 402 F. Supp.2d 1312, 1325 (D. Kan. 2005). This is especially true where plaintiff's mark has been inconsistently used. *See Sally Beauty Co.*, 304 F.3d at 973 (differentiating between marks consisting of words alone and those involving pictorial designs with clearly dominant visual elements). In *Big Dog Motorcycles*, two marks using "Big Dog" in their titles had different graphics and fonts whereby one mark conveyed a "fun, sassy meaning" while the other, which contained "skulls, flames, spades [and] Maltese crosses . . ." conveyed a measure of superiority vis a vis other motorcycle brands. 402 F. Supp.2d at 1327–28.

Additionally, where two marks utilize different *additional* terms or logos—even if the additional terms are disclaimed—the court is less likely to find evidence of confusion. For example, in *Universal Money Ctrs., Inc.*, *supra*, 22 F.3d at 1531, both parties used the term "universal," although each party's mark used additional terms or logos in conjunction with "universal" that were quite different from each other. Thus, in comparing the marks as a whole, there was little risk of likelihood of confusion.

Applying that reasoning here, plaintiff's registration of the phrase "Poison Spider Bicycles" is primarily similar to Defendants' "Poison Spyder Customs" in that the first two words of the mark sound the same. Otherwise, the respective marks are very different. To begin with, each mark has a different word at the end: "Bicycles" for the plaintiff's mark, and

7

"Customs" for Defendants' mark. These additional terms carry different meaning. Plaintiff's "Poison Spider Bicycles" mark began as a somewhat kitchy, fun mark that has grown somewhat more serious in recent years, but in any event promotes cycling, family fun, and respect for the environment consistent with their website. The PSC marks convey a very different message, namely promoting heavily customized machines designed to conquer nature in large off-road vehicles that can surmount car-sized boulders, appealing to a more extreme, less environmentally protective clientele. Second, the word "spider" is spelled differently in the two marks, with TAP's PSC mark using a "y" in "spyder." Third, beyond the fact that both logos invoke spiders, there is little similarity between TAP's spider logo—which is a graphical, stylized representation of a spider that is not intended to be realistic—and plaintiff's various spider logos, which have both varied over the years and are generally representative of an actual spider.

Accordingly, while a portion of the parties' respective marks sound the same or similar, they are in other respects quite different and convey very different messages by design. In addition to plaintiff having failed to provide tangible evidence of actual confusion in the marketplace, these differences weigh heavily against finding a likelihood of confusion between the two marks.

B.  <u>The intent of the alleged infringer in adopting its mark.</u>

This factor focuses on "'whether defendant had the intent to derive benefit from the reputation or goodwill of plaintiff.'" *King of the Mtn. Sports*, 185 F.3d at 1091 (quoting *Jordache Enters., Inc. v. Hogg Wyld, Ltd.*, 828 F.2d 1482, 1485 (10th Cir. 1987). The undisputed evidence is that both parties derived the inspiration for their names and marks from a well-known geographical location, Poison Spider Mesa Trail, in Moab, Utah. For plaintiff's purposes, the location is well known, at least locally, as a scenic mountain biking trail. For TAP and its

predecessors, Moab, Utah is well known for the annual and long-running Easter Jeep Safari event; the Poison Spider Mesa Trail in particular is well known nationally to Jeep enthusiasts as one of the most difficult and scenic Jeep trails nationwide. The court has no facts before it that support an inference that Defendants adopted the "poison spyder" portion of their mark with the intent to derive benefit from plaintiff's mark, as opposed to the intent to benefit from name recognition of the public trail itself. Thus, this factor weighs heavily against a finding of likelihood of confusion.

### C. Evidence of actual confusion.

"De minimis evidence of actual confusion does not establish the existence of a genuine issue of material fact regarding the likelihood of confusion." *Universal Money Ctrs.*, 222 F.3d at 1535; *see also* 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:02[2][b], at 29 (3d ed. 1992) ("Evidence of actual confusion of a very limited scope may be dismissed as de minimis: 'Probable confusion cannot be shown by pointing out that at some place, at some time, someone made a false identification.'" (quoting *McGraw-Hill Pub. Co. v. American Aviation Assocs., Inc.*, 117 F.2d 293, 295 (D.C. Cir. 1940)).

Plaintiff has produced documents and/or testimony referencing only two instances of alleged actual confusion. Specifically, in the deposition of Scott Newton, President and owner of Poison Spider Bicycles, he named two individuals/customers who allege they saw Defendants' Jeeps and thought they may be affiliated with the bicycle shop. (*See* ECF No. 30-23.) "Because we must view the evidence in the light most favorable to [plaintiff] . . . we assume [this testimony] constitute[s] some evidence of actual confusion, though this is a generous interpretation of the record." *Universal Money Ctrs., Inc.*, 22 F.3d at 1535. "Nevertheless, evidence of some actual confusion does not dictate a finding of likelihood of confusion." *Id.* S*ee*

9

*also King of the Mtn. Sports*, 185 F.3d at 1092 ("After carefully reviewing the record, we have found that plaintiff has put into evidence, at most, only seven examples of actual confusion. This handful of anecdotal evidence is de minimis and does not support a finding of a genuine issue of material fact as to the likelihood of confusion, especially in light of the complete lack of similarity between the defendants' uses and plaintiff's mark.") Accordingly, this factor also weighs in favor of Defendants.

        D. <u>The relation in use and the manner of marketing between the goods or services marketed by the competing parties</u>.

"Typically, 'the greater the similarity between the products and services, the greater the likelihood of confusion.'" *King of the Mt. Sports*, 185 F.3d at 1092 (quoting *Universal Money Ctrs.*, 22 F.3d at 1532). In *Big Dog Motorcycles*, as plaintiff has done here, the party alleging infringement attempted to cast the case as a dispute between two sellers of apparel, when in fact one of the party's core product offerings was new motorcycles. As the court noted, "the similarity of products would appear at first blush to weigh strongly in favor of a likelihood of confusion with respect to Motorcycles' apparel and collectibles because the two product lines are so similar." 402 F. Supp.2d at 1329. It was undisputed, however, that "Motorcycles' apparel and collectible sales comprise less than one percent of its total sales. Thus, 'there is generally no overlap, except when considering a limited subset of products.'" *Id.* at 1330 (quoting *Autozone, Inc. v. Tandy Corp.*, 373 F.3d 786, 798 (6th Cir. 2004). As a result, "although the parties' products lines are similar with respect to apparel and collectibles, the significance of that similarity is diminished by the fact that the two companies generally occupy two separate and distinct market niches." *Id.* Furthermore, the court determined that the parties' marketing channels were similarly divergent, with Motorcycles' marketing focused in licensed motorcycle
10

dealerships and its showroom, and defendant's marketing through its own retail stores, catalogs, and the Internet. *Id.*

Plaintiff is a bicycle shop primarily focused on products and services related to bicycles in Moab, Utah, including new and used bicycles, bicycle rentals, bicycle service, bicycle tours, etc. Its registered mark includes bicycles and bicycle accessories, including water bottles, fanny packs, caps and T-shirts. Plaintiff does not compete in the off-road vehicle accessory market, does not sell off-road parts and accessories or service off-road vehicles, and has no plans to do so. Plaintiff admits, however, that their apparel sales are a marketing tool:

> Q. You're selling T-shirts to customers as a means of further advertising your brand, your bicycle brand, and permitting customers to further identify with that brand, correct?
>
> A.     Yes.

(ECF No. 30-23 at 14.) Thus, customers purchase plaintiff's branded apparel to further identify with the brand they like—admittedly a full service bike shop—not because they are confused.

TAP's primary products and services are related to the customization of Jeep SUVs for hardcore off-road use. Services are focused on nationwide Jeep owners who want to upgrade the look and/or off-road capability of their vehicles. TAP does not sell or service bicycles or bicycle accessories. TAP's sale of its branded apparel or clothing is only marginally related to the Defendants' off-road events; in fact, Defendants' undisputed evidence is that sale of their branded apparel amounts to only two percent of their revenue. Like plaintiff's customers, Defendants' customers purchase its branded apparel to further identify with the PSC brand they like, not because they are confused. The undisputed affidavit of TAP's General Manager Rick Hartwick states that TAP's products are marketed to off-road enthusiasts looking to upgrade their Jeep and who "can afford to purchase premium quality parts and accessories." (ECF No. 29

¶ 6.) There is generally no overlap between the parties' products and services, except when considering a minor subset (branded apparel) of PCS's product line. As a result, this factor also weighs heavily against a finding of likelihood of confusion.

E. <u>The degree of care likely to be exercised by purchasers</u>.

"A consumer exercising a high degree of care in selecting a product reduces the likelihood of confusing similar trade claims." *King of the Mtn. Sports*, 185 F.3d at 1091. "'The relevant inquiry focuses on the consumer's degree of care exercised at the time of purchase.'" *Big Dog Motorcycles*, 402 F.Supp.2d at 1335 (quoting *Sally Beauty Co.*, 304 F.3d at 975). Here, the target demographic of the parties' respective products are niche markets, bicycle or Jeep enthusiasts who are in all likelihood purchasing one of the parties' branded apparel items to further identify with that brand. The parties presented little evidence either way about actual customer degree of care. Given the totality of circumstances here, "even if plaintiff's current and potential customers exercise a high degree of care, it would have little impact on our determination regarding likelihood of confusion in this case." *King of the Mtn. Sports*, 185 F.3d at 1092.

F. <u>The strength or weakness of the marks</u>.

"'A strong trademark is one that is rarely used by parties other than the owner of the trademark, while a weak trademark is one that is often used by other parties.'" *King of the Mountain*, 185 F.3d at 1093 (quoting *First Sav. Bank*, 101 F.3d at 653). "'The greater the number of identical or more or less similar trademarks already in use on different kinds of goods, the less is the likelihood of confusion' between any two specific goods incorporating the weak mark." *Universal Money Ctrs.*, 22 F.3d at 1533 (quoting Restatement of Torts § 729, comment q (1938)). Defendants submitted a list of thirty third parties who have registered trademarks

using the word "spider." (*See* ECF No. 30-21.) Given that the term is used by a significant number of entities, it cannot be said to represent a strong mark. *Vail Assocs. v. Vend-Tel-Co., Ltd.*, 516 F.3d 853, 867 (10th Cir. 2008) ("the term is used by a significant number of entities and is thus a relatively weak mark.").

The Tenth Circuit requires consideration of two factors regarding the relative strength of a mark: "(1) Conceptual Strength: the placement of the mark on the [distinctiveness or fanciful-suggestive-descriptive] spectrum; and (2) Commercial Strength: the marketplace recognition value of the mark." *King of the Mtn. Sports*, 185 F.3d at 1093 (internal quotations omitted). "Under the conceptual strength prong, the categories. in descending order of strength, are: fanciful, arbitrary; suggestive; descriptive; and generic." *Id.* Here, both parties acquired the first two words of their marks from a geographic location—the Poison Spider Mesa Trail—and thus represent descriptive marks not high on the conceptual strength prong. Furthermore, a geographically-descriptive mark like the one here does not easily acquire strong secondary meaning. *See Tony's Taps, LLC v. PS Enters.*, No. 08-cv-01119-MSK-KLM, 2012 U.S. Dist. LEXIS 43293, *29-30 n.14 (D. Colo. March 29, 2012) ("For a geographically-descriptive mark to acquire secondary meaning, the public must cease to view the geographic portion of the mark as denoting a <u>place</u>, and instead come to understand the geographic term as identifying an <u>entity</u>." (citing *OBX-Stock, Inc. v. Bicast, Inc.*, 558 F.3d 334, 340 (4th Cir. 2009) (giving examples of "KENTUCKY fried chicken" and "AMERICAN airlines" [as] "geographically descriptive marks that have established secondary meanings in consumer's minds, causing consumers to recognize a brand or source or fried chicken or air travel, rather than the places, Kentucky and America.")

As for the commercial strength of plaintiff's mark, while plaintiff may have held its trademark for years, "incontestable status should not dictate the conclusion that the mark is strong with no further analysis." *Vail Assocs.*, 516 F.3d at 867. While plaintiff has undoubtedly established a following in the cycling community in Southern Utah, which is viewed in the light most favorably to plaintiff, this does not itself establish a mark of any particular strength and does not alone establish a genuine issue of fact suggesting a likelihood of confusion between the two marks.

For all of the foregoing reasons, the court finds that there is no likelihood of confusion between the two marks and GRANTS summary judgment in favor of Defendants as to claims one, two, seven, and nine.

## II. Trademark Dilution Claims

To establish a federal or Utah state claim for trademark dilution, plaintiff must establish that it owns a famous mark and that Defendants' use has or will cause dilution. *See* 15 U.S.C. § 1125; U.C.A. § 70-3a-403. A dilution claim can only be maintained if plaintiff's mark was famous before Defendants began their use of their logo. *See id.* A mark is "famous" if "it is widely recognized by the general consuming public." 15 U.S.C. § 1125(c)(2)(A). Additionally, the court considers the "duration, extent and geographic reach of advertising and publicity of the mark"; the "amount, volume, and geographic extent of sales"; "extent of actual recognition of the mark"; and "whether the mark was registered." *Id.* Although plaintiff claims its mark is famous, it failed to proffer any admissible evidence to support the claim, including any of the four factors

cited by statute.[1] On the contrary, during his deposition Scott Newton admitted the fame of Poison Spider is "not up there with Kleenex." (Newton Dep. at 110:1-13, ECF No. 29-23.) Certainly there is no evidence that plaintiff's mark was "famous" as of 2003, the year in which TAP's predecessor in interest began using the PSC marks in commerce. The limited information available regarding plaintiff's annual sales and advertising/promotional expenses also do not support a widespread market or wide recognition of plaintiff's mark among the general consuming public.

Even viewing the record in the light most favorable to plaintiff, and assuming plaintiff is "famous" in the local Moab bicycling community or throughout Southern Utah, the 2006 amendments to § 1225(c)(2)(A) require more than "niche market fame" to support that its mark was "famous" within the meaning of the trademark dilution statutes. *See also King of the Mtn. Sports*, 968 F. Supp. at 578 (ruling that fame within the narrow market of hunting apparel is insufficient for purposes of trademark dilution); *Water Pik, Inc. v. Med-Sys., Inc.*, 848 F.Supp.2d 1262, 1282–83 (D. Colo. 2012) (ruling that fame within the niche sinus irrigation market fails to establish fame for purposes of trademark dilution); *Hodgon Power Co. v. Alliant Techsystems, Inc.*, 497 F. Supp.2d 1221, 1231 (granting summary judgment on grounds that "plaintiff has presented no evidence demonstrating the level of public recognition of its mark or that it is famous outside the narrow gunpowder market"). In sum, plaintiff has not established that its mark has become a household name in Utah, much less in the United States as a whole. At best, plaintiff has created a following for its mark in the cycling enthusiast community in and around Moab, Utah. This is wholly insufficient for purposes of establishing fame within the meaning of

---

[1] Defendants reference plaintiff's mark as having been registered, but plaintiff did not provide evidence of its actual trademark registration. For purposes of this opinion, the court assumes that plaintiff's mark is properly registered as represented.

federal and state dilution statutes. Therefore, the court grants Defendants summary judgment on claims three, four, and eight of the Complaint.

### III. Utah Unfair Competition Act Claim

A claim for violation of the Utah Unfair Competition Act requires "an intentional business act or practice that: (i)(A) is unlawful, unfair, or fraudulent; and (B) leads to a material diminution in value of intellectual property; and (ii) is one of the following: . . . (B) infringement of a patent, trademark, or trade name." Utah Code Ann. § 13-5a-102. Courts interpreting this Act have found that the complaint must allege something "beyond simple trademark infringement" to satisfy the requirements; stated differently, plaintiff must prove "infringement-plus." *Eleutian Tech., Inc. v. Ellucian Co., L.P.*, No. 2:15-CV-00649, 2017 U.S. Dist. LEXIS 25589, *10-11, *22 (D. Utah Feb. 21, 2017). In other words, in addition to trademark infringement, plaintiff must prove the existence of a business practice that is "unlawful, unfair, or fraudulent." *Klein-Becker USA, LLC v. Home Shopping Network, Inc.*, No. 2:05-CV-00200 PGC, 2005 WL 2265007, at *6 (D. Utah Aug. 31, 2005).

According to plaintiff's complaint, "Defendants, through their Internet, advertising and search engine marketing, have engaged in unfair competition by intentionally using Poison Spider Bicycles, Inc.'s name, marks and location to trade on Poison Spider Bicycles, Inc.'s long-standing and hard-earned goodwill in its name and marks…." (Compl. ¶ 83.) In plaintiff's opposition brief, this allegation expanded to "[t]he marketing of PSC marked Complained Goods by Defendants and third parties [eBay and Amazon stores] has caused internet search results for the terms 'Poison Spider T-shirt' to default to and show only Defendants' goods on the first page of results." (Pl. Opp'n 21, ECF No. 38.) There is no evidence to support these allegations. Plaintiff's owner Scott Newton admitted at his deposition that no analysis had been conducted to

determine whether Defendants were, in fact, utilizing metadata on their website to improperly influence search terms, saying only "I would say that's something I suspect is happening." (Newton Dep. at 135:9-231, ECF No. 29-23.) Additionally, plaintiff's search term result screenshots are unauthenticated and inadmissible, even if the court had not stricken plaintiff's opposition briefing due to untimeliness. Thus, the court grants Defendants' motion for summary judgment on claim five.

### IV. Utah Consumer Sales Practice Act Claim

The purpose of Utah Code Ann. § 13-11-2(2) is "to protect consumers from suppliers who commit deceptive and unconscionable sales practices." Specifically, "[a] deceptive act or practice by a *supplier* in connection with a *consumer* transaction violates this chapter." U.C.A. § 13-11-4 (emphasis added). Plaintiff's Complaint fails to allege, nor is there any admissible evidence, that the parties engaged in a "consumer transaction" that gave rise to a cognizable loss within the meaning of the Utah Consumer Sales Practice Act. Accordingly, the court grants summary judgment to Defendants on claim six.

## CONCLUSION

For the foregoing reasons, the court GRANTS summary judgment in favor of Defendants on all claims and this action is dismissed.

DATED this 12th day of February, 2018.

BY THE COURT:

_____
Honorable Clark Waddoups
United States District Judge